UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA, ex rel. ) <br> GLOBE COMPOSITE SOLUTIONS, LTD. ) <br>     Plaintiff, ) <br> ) <br> v. ) <br> ) <br> SOLAR CONSTRUCTION, INC. f/k/a ) <br> GLOBE RUBBER WORKS, INC., and ) <br> RICHARD C. SOMERVILLE ) <br>     Defendants. ) | Civil Action No. 05 10004-JLT |

**JOINT SUBMISSION OF RELATOR AND DEFENDANTS
REGARDING COURT'S AUTHORITY TO DISMISS ACTION
<u>WITH PREJUDICE AS TO THE GOVERNMENT</u>**

The relator Globe Composite Solutions, Ltd. ("Globe Composite") and Solar Construction, Inc., f/k/a Globe Rubber Works, Inc. ("Globe Rubber"), and Anne Somerville, in her capacity as Executrix of the Estate of Richard C. Somerville[1] ("Somerville," together with Globe Rubber, the "Globe Rubber Parties"), make this submission pursuant to the Court's Order dated October 31, 2007.[2] For the reasons set forth below, Globe Composite and the Globe Rubber Parties respectfully submit that the Court has the authority to dismiss this action with prejudice as to the Government irrespective of whether the Government consents to the dismissal.

---

[1] Richard Somerville died in June 2005.

[2] The Globe Rubber Parties have not been served in this action and therefore make this appearance only for the limited purpose of responding to the Court's October 31, 2007 Order. As discussed at the status conference on October 31, 2007, the Globe Rubber Parties reserve, and do not waive, their right to be formally served in this action.

**Background**

Globe Composite filed this action on January 3, 2005. Pursuant to 31 U.S.C. § 3730(b)(2), the complaint remained under seal for 60 days to allow the Government to investigate the allegations set forth therein and decide whether to intervene and take over the conduct of the litigation. After the expiration of the initial 60-day period, the Government sought six extensions of the seal period, making its last request on April 4, 2007. In its April 4 request, the Government sought to extend the seal period until October 1, 2007. On April 9, 2007, the Court denied the Government's motion to extend. Notwithstanding the expiration of the seal period approximately seven months ago, the Government has neither intervened in the action nor notified the Court of its decision not to take over the conduct of the litigation, as it is required to do under 31 U.S.C. § 3730(b)(4).

Shortly after filing the current action, Globe Composite brought a separate civil action against the Globe Rubber Parties, among others, who in turn asserted counterclaims against Globe Composite and others. In the spring of 2007, the parties to the civil action began to make arrangements to engage in mediation, eventually holding three days of mediation over the summer. The Government knew that the parties planned to go to mediation and further knew that settlement was possible only if both the current action and the civil action were included within the scope of any settlement. At all times, the Government was made aware of the parties' attempt through mediation to reach a settlement. On August 16, 2007, Globe Composite, the Globe Rubber Parties, and others reached a settlement agreement contingent upon the dismissal of this case with prejudice, including the claims of both Globe Composite and the Government. Originally, the deadline for such dismissal was October 16, 2007. The deadline has been extended to November 20, 2007, and

the parties have discussed a further extension in the event the motion to dismiss with prejudice is allowed to cover any applicable appeal period.

### Argument

Section 3730(b)(1) of the Federal False Claims Act, 31 U.S.C. § 3729, *et seq.* ("FCA"), provides that an action "may be dismissed only if the court and the Attorney General give written consent to the dismissal and their reasons for consenting." 31 U.S.C. § 3730(b)(1). The government's veto authority over dismissals is not absolute, however. For example, the Court has the authority to enter an involuntary dismissal of an FCA action, irrespective of whether the Attorney General consents to the dismissal. *See Minotti v. Lensink*, 895 F.2d 100, 102 (2nd Cir. 1990) (per curiam) (affirming involuntary dismissal of FCA action as sanction for relator's failure to comply with discovery obligations); *see also United States ex rel. Doyle v. Health Possibilities, P.S.C.*, 207 F.3d 335, 343-44 (6th Cir. 2000) (acknowledging that granting government veto authority with respect to an involuntary dismissal could present separation of powers issues).

In the context of voluntary dismissals, the Ninth Circuit has held that the consent provision of § 3730(b)(1) is limited to the 60-day seal period, and any extensions thereof. *United States ex rel. Killingsworth v. Northrop Corp.*, 25 F.3d 715, 722 (9th Cir. 1994); *see also United States ex rel. Hullinger v. Hercules, Inc.*, 80 F. Supp. 2d 1234, 1240 (D. Utah 1999) ("Thus, placing section 3730(b)(1) in context, it appears to the court that requiring the Attorney General's written consent to a dismissal is limited to the initial period in which the government is deciding whether to intervene."). Once the government decides not to intervene and take over the conduct of an action, however, the relator may seek a voluntary dismissal of the entire action, *i.e.*, with respect to the government as well as the relator's own

3

claims. The Ninth Circuit based its conclusion on various sources, including the legislative history of the FCA and the plain language of § 3730.

In *Killingsworth*, the court reasoned that the 1986 amendments to the FCA sought to encourage more private enforcement of the statute. As a result, in the absence of government intervention, granting the government an absolute right "to block a settlement and force a private party to continue litigation," would be "fundamentally inconsistent" with "Congress' intent to place full responsibility for False Claims Act litigation on private parties." *Killingsworth*, 25 F.3d at 722. The Court further looked to § 3730 as a whole to support its conclusion concerning the limited scope of the consent provision of § 3730(b)(1). For example, the Court noted that § 3730(b)(4)(B) provides that the relator "shall have the right to conduct the action" in the event the government "notif[ies] the court that it declines to take over the action." *Id.* The right to "conduct" the litigation includes the right to negotiate a settlement. *Id.* Finally, the Court considered the practical implications of extending the government an absolute veto power over voluntary settlements, namely that the government, by "refusing to consent to a settlement," could force the relator and the defendant to continue litigating an action that they had no interest in pursuing. *Id.* at 723.

A leading commentator has endorsed the soundness of the reasoning in *Killingsworth* and has characterized as "questionable" the "rationale and conclusions" of the decisions by the Fifth and Sixth Circuits interpreting the consent provision of § 3730(b)(1) as granting the government an absolute veto power over voluntary settlements reached at any time. *See* John T. Boese, Civil False Claims and Qui Tam Actions § 4.07[B] (3d ed.). The Fifth Circuit in *Searcy v. Philips Electronics North America Corp.*, 117 F.3d 154 (5th Cir. 1997), and the Sixth Circuit in *United States ex rel. Doyle v. Health Possibilities, P.S.C.*, 207 F.3d 335 (6th

4

Cir. 2000), adopting a literal and narrow reading of § 3730(b)(1), held that the Attorney General's consent is necessary for a relator to dismiss *voluntarily* an FCA action at any stage of the proceedings, where the government has affirmatively declined to intervene in the litigation. *See Health Possibilities*, 207 F.3d at 339; *Searcy*, 117 F.3d at 155.

Aside from the "questionable" reasoning of *Searcy* and *Health Possibilities*, these cases are inapposite because in both the government gave notice of its intent not to intervene in the litigation. In contrast, in the nearly seven months since the Court denied the Government's last motion to extend the seal period, the Government has failed to take over this litigation or to notify the Court that it declines to take over the action, as required by § 3730(b)(4). The Government's failure to fulfill its obligations under § 3730(b)(4) deprives it of standing to challenge the dismissal with prejudice of this action with respect to both Globe Composite, the relator, and the Government. When presented with a similar context, a district court in the Southern District of Ohio held that the government's failure either to intervene or notify the court of its decision to decline to intervene precluded the government from challenging the settlement, including the dismissal with prejudice of the FCA action as to the relator and the government. *See United States ex rel. Pedicone v. Mazak Corp.*, 807 F. Supp. 1350, 1352 (S.D. Ohio) ("While the language of § 3730(b)(1) might be read to suggest that no action may be dismissed without the consent of the Attorney General, even that interpretation of the language would require the Attorney General to comply in every material respect with the other provisions of the statute."), *overruled on other grounds by United States ex rel. Smith v. Lampers*, No. 02-3095, 2003 U.S. App. LEXIS 14248 (6th Cir.

5

July 11, 2003).[3]

Furthermore, dismissing the current action with prejudice as to the Government is both proper and equitable. The parties to the civil action have been engaged in protracted and expensive litigation, resulting in the combined incurrence of many hundreds of thousands of dollars in legal fees. The Government has been kept apprised of the status of the civil litigation at every stage and was itself directly involved when its review of potentially classified documents was required before the documents could be produced, a review that caused close to a one year delay in discovery. The parties have respectively concluded that settlement of the civil action is in their best interests. If the current FCA action is not dismissed with prejudice in its entirety, then the settlement of the civil action will unravel; the parties will be forced to continue, and the Court forced to expend judicial resources on, a litigation which the parties otherwise would prefer to avoid. Moreover, the time and resources that the parties expended in connection with mediation will have been unnecessarily wasted. The Government knew that the parties planned to go to mediation and further knew that settlement was possible only if both the current action and the civil action were included within the scope of any settlement. At no time during the approximately three-month period over which the mediation extended did the Government – which was kept

---

[3] In *Smith*, the Sixth Circuit noted the *Pedicone* court's holding in this regard, but did not pass on the validity of the district court's rationale because the facts presented in *Smith* were distinguishable – namely, the government had affirmatively declined to intervene in *Smith*. That is, in *Smith*, the government complied with its obligations under § 3730(b)(4). *See Smith*, 2003 U.S. App. LEXIS 14248, at *7 ("We do not need to decide whether this holding is consistent with our decision in *Health Possibilities*, because the instant case does not present a situation where the government failed to comply with any of the terms of the FCA."). Similarly, the Fifth Circuit in *Searcy* acknowledged and distinguished *Pedicone* on this basis. *Searcy*, 117 F. 3d at 158 (noting that in *Pedicone*, the court's "reasoning turned on the fact that the government failed to comply with § 3730(b)(4)'s requirement that it either proceed with the action or notify the court of its decision not to proceed").

apprised of the status of the parties' settlement negotiations – indicate its opposition to a dismissal with prejudice.  The Government's withholding of its consent to a dismissal with prejudice is particularly unwarranted given that it has had almost three years in which to investigate the allegations in the FCA complaint, its investigation is officially closed, and no new information is likely to arise where Richard Somerville died over two years ago and certain assets of Globe Rubber were sold to Globe Composite more than three years ago in August 2004..  If the Government believed that the claims were worthy of pursuing it could have intervened in this action.  Instead, the Government seeks to have it both ways – it has opted not to expend its own resources to litigate this action, yet refuses to relinquish the possibility of initiating its own action against the Globe Rubber Parties at some later time.  This is patently unfair to both Globe Composite and the Globe Rubber Parties.

## Conclusion

For the foregoing reasons, Globe Composite and the Globe Rubber Parties respectfully request that the Court dismiss the above-captioned action with prejudice with respect to Globe Composite and the Government.

        Respectfully submitted,

        Globe Composite Solutions, Ltd.
        By its attorneys,


        <u>/s/ Clare B. Burhoe</u>
        Evan T. Lawson (BBO# 289280)
        Clare B. Burhoe (BBO# 632238)
        Lawson & Weitzen, LLP
        88 Black Falcon Avenue, Suite 345
        Boston, MA 02210
        (617) 439-4990

            - and -

        Solar Construction, Inc., f/k/a Globe Rubber Works,
        Inc., and Anne Somerville, in her capacity as Executrix
        of the Estate of Richard C. Somerville
        By their attorneys,

        <u>/s/ Emily C. Shanahan</u>
        Mark S. Furman (BBO# 181680)
        Emily C. Shanahan (BBO# 643456)
        Tarlow, Breed, Hart & Rodgers, P.C.
        101 Huntington Avenue
        Boston, MA 02199
        (617) 218-2000

Dated:  November 7, 2007